**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

LYNN E. TALLEY, D.O.,                    )
                                         )
        Plaintiff,               )
                                         )          C.A._____
    vs.                                )
                                         )          JURY TRIAL DEMANDED
CHRISTIANA CARE HEALTH                   )
SYSTEM; MATTHEW K. HOFFMAN, MD;          )
and KENNETH L. SILVERSTEIN, MD           )
                                         )
        Defendants.              )
                                         )

## **COMPLAINT**

### **INTRODUCTION**

1.     Plaintiff, Lynn E. Talley, D.O. ("Plaintiff") files this action against Defendants for compensatory and punitive damages for violations of the Sherman Act, breach of contract, lack of procedural due process, defamation, intentional infliction of emotional distress, interference with prospective economic advantage, tortious interference with contractual relations, declaratory judgment and breach of the covenant of good faith and fair dealing.

### **THE PARTIES**

2.     Plaintiff is a citizen of the United States and a resident of the Commonwealth of Pennsylvania.  She is a licensed physician with over 39 years of experience in the field of Obstetrics and Gynecology.  She first joined the staff at Christiana Care Health System in 1982.

3.     Defendant Christiana Care Health System ("Christiana Care") is a private, non-profit corporation with its headquarters located at 4735 Ogletown-Stanton Road, Newark, DE 19713.

4.     Defendant Dr. Matthew K. Hoffman, M.D. ("Defendant Hoffman"), 4755 Ogletown-Stanton Road, Suite 1901, Newark, DE 19713. Defendant Hoffman is the Marie E. Pinizzotto, M.D., Endowed Chair of Obstetrics and Gynecology at Christiana Care.

5.     Defendant Dr. Kenneth L. Silverstein, M.D. ("Defendant Silverstein"), Management Suite 1270, Room 1281, 4755 Ogletown-Stanton Road, Room 1903, Newark, DE 19713. Defendant Silverstein is the Chief Clinical Officer of Christiana Care Health System.

## JURISDICTION AND VENUE

6.     This is an action to recover treble damages for injuries resulting from Defendants' violation of the antitrust laws of the United States. The Court has primary jurisdiction over this action pursuant to Title 15 of the United States Code, 28 U.S.C. §§ 1331 and 1337(a), and Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

7.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of the parties exists and because the matter in controversy exceeds $75,000.

8.     This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

9.     All relevant acts constituting antitrust and state law violations alleged herein occurred within the judicial district of this court, so that venue is proper in the District of Delaware under the provisions of 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15 and 22.

## SUBSTANTIVE ALLEGATIONS

### Background

10.     Plaintiff owned a private practice, WomenCare, P.A., located at Medical Arts Pavilion I, Suite 231, 4745 Ogletown-Stanton Road, Newark, DE 19713. At the time of Plaintiff's termination

of privileges, she had approximately 7,200 patients, which consisted of about 73 active obstetric patients.

11.     Plaintiff graduated from Philadelphia School of Osteopathic Medicine in 1976.

12.     From 1976 to 1978 Plaintiff attended John F. Kennedy Memorial Hospital and completed a one year internship and residency in Obstetrics and Gynecology.

13.     She completed her residency at Wilmington Medical Center now known as Christiana Care Services Hospital in 1978-1982.

14.     Plaintiff completed a five-year residency in Obstetrics and Gynecology, which consisted of an additional year in order to obtain her board certification by ACOG in Obstetrics and Gynecology.

15.     Plaintiff became Board Certified by the American College of Obstetrics and Gynecology in 1984.

16.     Plaintiff was a member of the Medical-Dental Staff of Defendant Christiana Care since 1982 until her wrongful termination on July 15, 2016.

17.     Plaintiff was granted privileges to practice medicine as a member of Defendant Christiana Care's medical staff and became entitled to the protections as outlined in the Medical-Dental Staff Bylaws (the "Bylaws") of Defendant Christiana Care, as well as the Medical-Dental Staff Credentials Manual ("Credentials Manual").

18.     The Bylaws and Credentials Manual creates a contract between Plaintiff and Defendant Christiana Care.

19.     The Bylaws and Credentials Manual afforded Plaintiff due process protections before her privileges and staff credentials could be affected, which included, *inter alia*, the right to a fair hearing and appeal mechanisms.

3

20.    The Credentials Manual, specifically Article 7, provides impartial and objective quasi-judicial due process procedures which were not followed by Defendant Christiana Care.

### Defendants Restrict Plaintiff's Privileges

21.    Plaintiff served on the Safety First Committee of Christiana Care Hospital. She was asked to serve on committee by previous Department Chairman Dr. Derman.

22.    The purpose of the Safety First Committee is for physicians and administrators to meet and review specific cases of concern, as well as to evaluate the safety processes and establish protocols.

23.    During the Safety First Committee meetings Plaintiff raised multiple concerns regarding the safety of patients due to certain policy and procedures of Christiana Care Hospital.

24.    Once Plaintiff began to bring these safety concerns and issues forward Defendants began to ramp up their harassment towards Plaintiff.

25.    After approximately forty years of practice Plaintiff was written up and placed on a Focused Professional Practice Evaluation ("FPPE"), which required Plaintiff's professional judgment to be routinely second guessed by attendees who had significantly less experience and knowledge than Plaintiff about her patients, after she began reporting these incidents of safety concerns.

26.    Defendant Christiana Care placed Plaintiff on the FPPE to humiliate, harass and retaliate against her.

27.    As further harassment and retaliation, on or about July 7, 2014, Dr. Janice Nevin, Chief Medical Officer of Christiana Care forced Plaintiff to take a voluntary leave of absence.

28.    Plaintiff was forced to take voluntary leave because of an incident during a de-briefing in which Plaintiff called the former Chair of Obstetrics and Gynecology a "bold face liar," because his statement contradicted electronic documentation.

29.     Plaintiff was threatened by Dr. Nevin and told if she did not take the leave of absence she would be subjected to worse consequences.

30.     Defendant Christiana Care tried to force Plaintiff to take a year's leave of absence, however, Plaintiff was cleared to return to work in less than thirty days.

31.     Even though Plaintiff was cleared to return to work on or about July 31, 2014, Defendant Christiana Care failed to actually allow her to return to work until August 22, 2014.

32.     Defendant Christiana Care failed to follow their policies and procedures for voluntary leave of absences as set forth in their Bylaws.

33.     Defendants began to increase its harassment and retaliation efforts on Plaintiff by forcing residents to "spy" on Plaintiff and encouraging them to make reports/complaints against Plaintiff.

34.     Defendant Christiana Care is a teaching hospital which provides residents the opportunity to learn through assisting experienced doctors such as Plaintiff.

35.     Defendants created an environment at the hospital in which the residents were encouraged to doubt and challenge the professional opinions and clinical judgments of Plaintiff without any basis.

36.     The residents were informed that Defendant Christiana Care was "gathering evidence" against Plaintiff.

37.     Dr. Anthony Sciscione, Residency Director, on numerous occasions went behind Plaintiff's back and attempted to get the residents to "spy", "monitor", and "gather evidence" on Plaintiff.

38.     Dr. Sciscione repeatedly tried to encourage the residents to make reports about Plaintiff's clinical judgments even though numerous other colleagues had stated Plaintiff's clinical practice skills were excellent and she was dedicated to her patients.

39.     The continued false and misleading information from the Residency Director to the residents caused the residents to unnecessarily distrust and question Plaintiff's decision making and skills.

40.     The relationship between Plaintiff and the residents suffered as a consequence.

41.     The Residency Director is instrumental for fellowship placement, award recognition, letters of recommendation and future job placement for the residents.

42.     As a result, the residents are beholden to the Residency Director.

43.     Due to the toxic and distrustful environment Dr. Sciscione created between the residents and Plaintiff, the residents began to make unsubstantiated complaints against Plaintiff, which were blindly accepted.

44.     On July 14, 2015, Plaintiff received a letter from Dr. Derman removing her from the teaching service for a period of four weeks, without any investigation, based upon two complaints from residents which were completely unfounded.

45.     Even though the investigation concluded, on or about July 21, 2015, that the complaints were unfounded Plaintiff was not reinstated to the Educational Program.

46.     Defendant was upset with the fact that Plaintiff refused to agree to the conditions to allow her to return to the teaching staff, and continued its harassment in an attempt to terminate Plaintiff's credentials and privileges.

47.     On or about March 24, 2016, Plaintiff was notified via letter that her privileges were precautionarily suspended.  Plaintiff was denied the opportunity to speak on her own behalf to the MEC and the Peer Review Committee.

48.     On April 4, 2016, Plaintiff submitted her response to Defendant Silverstein regarding her precautionary suspension.

49.     Plaintiff's privileges were reduced for, among other things, "…Concern that your behavior and interactions do not promote a working environment conducive to team-based patient care," and "…Concern that your behavior and professional practice is not conducive to the education of residents."

50.     Plaintiff's privileges were immediately suspended for allegations which were not directly related to patient care, as neither Patient A or the babies referenced had a bad outcome.

51.     There were multiple individuals involved in the care of Patient A, and Plaintiff was the only member who received any disciplinary action.

52.     Without any additional evidence the Chair, Dr. Hoffman after consultation with the Chief Clinical Officer, Dr. Silverstein, decided without citing any supporting rationale to add several additional conditions to be imposed upon Plaintiff.

53.     The suspension caused Plaintiff to have to find immediate coverage for her OB patients and multiple other patients had to be rescheduled for surgery.

54.     Defendants were aware that due to the fact that Plaintiff is a solo practitioner the termination of her privileges would result in the need for immediate coverage of her patients.

55.     At this time, Defendant had OBGYN hospitalists as well as ownership of an OBGYN group in Greenville, which they intended to use to treat Plaintiff's patients.

56.     On or about April 9, 2016, a patient of Plaintiff's, Patient B, was admitted into triage for a gastrointestinal issue.  She was told by a nurse in the employ of Christiana Care that Plaintiff had lost her privileges at the hospital, was no longer on staff and would not return.

57.     Patient B was then given information from Defendant's employee for the doctors associated with CCHS's Greenville Obstetrics and Gynecology Group and All About Women.

58.    The comments by Defendant's employee were completely meritless and directly called into question Plaintiff's competencies as a physician.

59.    On April 21, 2016, Plaintiff's Patient C was seen in triage complaining of pain.  Prior to Plaintiff's pre-cautionary suspension Patient C was scheduled to have surgery.  When Patient C was seen in triage there was no imminent need for surgery.  The same Defendant employee provided the name of other hospitalist surgeons at CCHS to perform the surgery.

60.    Defendant Christiana Care's actions and communications to Plaintiff's patients further harmed and damaged Plaintiff's reputation in the community by creating unnecessary doubt, fear, and uncertainty.

61.    Defendants actions effectively curtailed Plaintiff's ability to practice medicine and negatively impacted her reputation in the medical community.

62.    Plaintiff's precautionary suspension was lifted the following day, April 23, 2016 at 9:00 a.m.

63.    Plaintiff's privileges to practice at Christiana Care were renewed.

64.    Plaintiff was in full compliance with the conditions imposed upon her regarding her pre-cautionary suspension.

65.    Defendants had every intention to compete with Plaintiff and attempted to inhibit her ability to practice and remove her as competition.

66.    Based upon the fact that Plaintiff's privileges were renewed and she was following her conditions for reinstatement Defendants needed to manufacture a justification to terminate Plaintiff's privileges.

67.    As a result, on July 13, 2016, Plaintiff received a phone call from Defendant Hoffman informing her she was to be terminated from the Medical-Dental Staff of Christiana Care, effective as of Friday, July 15, 2016 at 5:00 p.m.

68.    Plaintiff's privileges were immediately terminated in direct violation of the Bylaws and without affording Plaintiff any due process.

69.    The Bylaws and Credentials Manual establish Due Process rights that must be followed prior to the termination of clinical privileges.

70.    The established process was eschewed in favor of the unilateral termination of Plaintiff's privileges by Defendant Silverstein.

71.    The termination of Plaintiff's clinical privileges was not reviewed by any reviewing committee, including but not limited to the Medical Executive Committee, and therefore, Defendant Christiana Care violated Plaintiff's Due Process rights in restricting her privileges without providing all the process and protections encompassed in its Bylaws and Credentials Manual.

72.    Defendant Christiana Care Hospital's, policies and procedures set forth the contractual requirements Defendant agreed to follow prior to affecting Plaintiff's staff privileges through corrective/disciplinary action.

73.    Defendant Hoffman, the Department Chair, or the designated departmental committee was required to report in writing the grounds suggesting the need for corrective/remedial action against Plaintiff.  The report was required to be supported by reference to the specific clinical activities or unprofessional conduct investigated through the Department and Peer Review Processes and was required to detail the findings of the processes, the prior peer review actions to date, and recommend specific corrective/disciplinary action.

74.    Prior to termination of Plaintiff's staff privileges Defendant Hoffman did not make such a report.

75.    The Department Chair's report should have been submitted and considered by the Staff Credentials Committee. The Staff Credentials Committee was permitted to perform its own investigation of the matter or remand the matter to the department for further review or for further information. If the Staff Credentials Committee decided corrective/disciplinary action was warranted, it was required to prepare a report with its findings, conclusions and recommendations and submit the report to the Medical Executive Committee for further action.

76.    Upon information and belief, the Staff Credentials Committee did not make any recommendation to the Medical Executive Committee regarding termination of Plaintiff's privileges.

77.    Medical Executive Committee, therefore, did not make any recommendation regarding the termination of Plaintiff's privileges.

78.    Defendant Silverstein took unilateral action to terminate Plaintiff's privileges through the July 13, 2016 letter informing her that her Medical-Dental Staff Membership and clinical privileges were terminated effective July 15, 2016.  The revocation of her privileges was not, and has never been, reviewed by any reviewing committee, including but not limited to the Medical Executive Committee.

79.    Plaintiff was not permitted the required thirty days to provide notice to her pregnant patients.

80.     Plaintiff was provided less than forty-eight hours to attempt to find coverage and transition OB patients.

81.    The immediate termination of Plaintiff's privileges without notification permitted Defendant CCHS to assume the immediate care of those patients based upon the fact that Plaintiff is a solo practitioner.

82.    Multiple patients were forced to be treated by physicians with whom they had no relationship, during one of the most important parts of their life, the birth of a child.

83.    Plaintiff attempted to have another solo practitioner assist her with the transition and care of her patients.

84.    This physician was threatened by Defendants and told he had to sign a document prepared by Defendant Christiana Care's counsel stating he would not assist Plaintiff with coverage for her patients.

85.    Plaintiff had a long-standing relationship with these patients and she was not able to properly notify or transition their care, as a result of the Defendants' improper termination of her privileges.

86.    Defendants' actions caused both Plaintiff and her patients damages and distress.

87.    The termination of Plaintiff's privileges was imposed in direct violation of the Bylaws and Credentials Manual.

88.    Plaintiff's OBGYN practice was decimated by the actions taken of Defendants Silverstein and Hoffman in failing to provide a hearing on the termination of her privileges.

89.    Her practice was further decimated by Defendants giving her only 2 days' notice of the termination of her Medical-Dental Staff privileges.

90.    Defendants Silverstein and Hoffman were aware of the deleterious effect the lack of notice and lack of hearing would have on Plaintiff's private practice.

91.     Defendants Silverstein and Hoffman acted outside of their immunity as derived in the Bylaws, Section 9.D.6 and 24 *Del. C.* § 1768 when they disclosed the confidential credentialing processes to persons not involved in said processes and did not act in good faith in the disclosure of such information.

92.     The building in which Plaintiff maintained her practice prior to her privileges being wrongfully terminated was located at 4735 Ogletown-Stanton Road, Newark, DE 1971, Suite 231, condominium unit 233, in the Christiana Medical Office Condominium (hereinafter known as the "Property").  There is a provision in the lease which states that Plaintiff must maintain her clinical privileges at the Hospital to maintain her office, located at Suite 231, condominium unit 233, in the Christiana Medical Office Condominium (hereinafter known as the "Property").

93.     Once Plaintiff's privileges were terminated, she had only a year to sell the Property.

94.     Defendant Christiana Care had a right of first refusal and exercised that right to prevent Plaintiff from selling her property to another practitioner.

95.     Upon information and belief, if Defendant Christiana Care gains 51% control of the Medical Arts Pavilion all the building's tenants would be forced to sell their suites for fair market value.

96.     Once Defendant terminated Plaintiff's privileges they knew within one year they would be able to gain physical control of her office space and increase the percentage of control over the Medical Arts Pavilion as well as assume the care of Plaintiff's patients.

## CAUSES OF ACTION

### Count I
### Violation of the Sherman Act

97.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 96 as if fully stated herein.

98.    Defendants knowingly, willingly, and maliciously conspired to inhibit trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Specifically, Defendants, motivated by anti-competitive intent, acted in concert to restrict Plaintiff's clinical privileges without providing due process afforded in the By-Laws and the Credentials Manual.

99.    Defendants took these unfair actions with the intent of limiting Plaintiff's privileges and curtailing Plaintiff's ability to practice medicine in the Delaware market, thereby effectively eliminating Plaintiff as a competitor. Given the logistics of the Delaware market, Defendant Christina Care is an essential facility and Plaintiff could not feasibly compete without the ability to see patients therein.

100.    Such restraint of trade is unreasonable and has, in fact, caused a diminution in competition in the field of Obstetrics at Christiana Care and in the relevant market from the time Plaintiff's privileges were restricted and continued going forward.  The competitive significance of Plaintiff's exclusion from Christiana Care can be measured by a particularized evaluation of her own practice, which has suffered, particularly because insurance and managed care contracts are in existence that limit patients' ability to select a hospital.  Thus, the consuming public that participates in managed plans requiring them to use Christiana Care could not see Plaintiff.

101.    Defendants' conduct is a *per se* violation because it involves a horizontal agreement among competitors to allocate markets and exclude competitors, including Plaintiff, from relevant service markets.

102.    In the alternative, Defendants' conduct violates Section 1 of the Sherman Act under the rule of reason.

103.    Defendants have sufficient market and monopoly power over the relevant service markets to appreciably restrain free competition in the market.

104.    Defendants' conduct harms competition in relevant service markets by excluding Plaintiff from competition.  Defendants and Plaintiff are competitors in the Delaware market.  As part of Defendants' agreement and conspiracy, Defendants communicated with third parties and prospective patients that do business with Plaintiff or might do business with Plaintiff, and restricted her ability to perform services in the market.

105.    Defendants' conduct harmed Plaintiff because Plaintiff's inability to do business with patients and develop her practice and have made it impossible to compete with Defendants in the Delaware Market.

106.    The fact Plaintiff was given no more than two days' notice of the termination of her clinical privileges made the reduction in her patient base all the more damaging to Plaintiff's practice.

107.    Further, Defendant Christiana Care's Ground Lease with Plaintiff, dated May 28, 1985, states that Plaintiff must maintain her clinical privileges at the Hospital to maintain her office, located at Suite 231, condominium unit 233, in the Christiana Medical Office Condominium (hereinafter known as the "Property").

108.    Once Plaintiff's privileges were terminated, she had only a year to sell the Property.

109.    Defendant Christiana Care has a right of first refusal and exercised that right to prevent Plaintiff from selling her property to another practitioner.

110.    Upon information and belief, if Defendant Christiana Care gains 51% control of the Medical Arts Pavilion all the building's tenants would be forced to sell their suites for fair market value.

111.    Defendants' conduct has and will, as a result, increase prices and decrease the quality and quantity of services in the relevant service markets.

112.    As a result of Defendants' anticompetitive conduct, Plaintiff has been injured through significant economic and financial loss, and reputational damage. Thus, Plaintiff has suffered antitrust injury from Defendants' anticompetitive conduct, which has harmed both competition and Plaintiff.

113.    Defendants' conduct and agreements do not qualify for immunity, nor are they reasonably related to any efficiencies or other benefits to justify their harmful effects on competition in the relevant service markets.   The anticompetitive harm from Defendants' conduct substantially outweigh the non-existent efficiency and competitive benefits.

### Count II
### Breach of Contract
**(Plaintiff v. Defendant Christiana Care)**

114.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 113 as if fully stated herein.

115.    Defendant Christiana Care's Bylaws are a contract between Christiana Care and its Medical-Dental Staff, including Plaintiff.

116.    Article 3D of Defendant Christiana Care's Bylaws, entitled "Peer Review Action" provides the procedure for corrective action and appeal rights regarding issues related to physician competence and behavior.   Defendant Christiana Care did not follow these procedures when acting to restrict and then terminate Plaintiff's Clinical Privileges.

117.    Article 7 of the Christiana Care Credentials Manual, entitled "Hearing and Appeal Procedures" provides additional procedures for corrective action and appeal rights. Defendant Christiana Care did not follow these procedures when acting to restrict and then terminate Plaintiff's Clinical Privileges.

118.    Defendant Christiana Care breached its contractual obligations to Plaintiff by failing to adhere to the processes set out in its own Bylaws and Credentials Manual before restricting and then terminating Plaintiff's clinical privileges.

<u>**Count III**</u>
<u>**Due Process Violations**</u>
**(Plaintiff v. Defendants Christiana Care and Silverstein)**

119.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 118 as if fully stated herein.

120.    Defendant Christiana Care's Bylaws clearly and unequivocally establish and afford Due Process Rights to Plaintiff with respect to discipline related to her competencies to practice medicine.

121.    Defendant Silverstein terminated Plaintiff's clinical privileges by virtue of the July 15, 2016 termination of her privileges at Christiana Care.

122.    The Process for Corrective/Remedial Action is set forth in the CCHS bylaws and the Credentials Manual. An event suggesting the need for corrective/remedial action shall be reported in writing to the departmental chairperson and be considered in the peer review system. The report must be supported by reference to the specific clinical activities or conduct, which constitutes the grounds for the report. The activities or conduct shall be investigated through the departmental and staff peer review process and be reported to the Staff Credentials Committee for appropriate action.

If the Staff Credentials Committee decides that the corrective/action is warranted, it is required to prepare a report with its findings, conclusions and recommendations and submit the report to the Medical Executive Committee for further action. The Medical Executive Committee may accept, modify or reject any recommendation it received from the Staff Credentials Committee.

123.    The Medical Executive Committee may recommend to the Board of Christiana Care Health Services, Inc. revocation of appointment and/or clinical privileges. The Hearing Panel will recommend in favor of the Medical Executive Committee unless it finds the individual who required the hearing proved the recommendation was not supported by credible evidence.

124.    Defendant Christiana Care's Bylaws clearly and unequivocally establish and afford Due Process Rights to Plaintiff with respect to discipline related to her competencies to practice medicine. Specifically, any requested corrective action portending a reduction, limitation or suspension of clinical privileges, shall permit Plaintiff to appear before a hearing officer to determine if the recommendation of the Medical Executive Committee was based upon "credible evidence."

125.    The termination of Plaintiff's clinical privileges was not reviewed by any reviewing committee, including but not limited to the Medical Executive Committee, and therefore, Defendant Christiana Care violated Plaintiff's Due Process rights in restricting her privileges without providing all the process and protections encompassed in its Bylaws and Credentials Manual.

126.    Defendant Silverstein took unilateral action to terminate Plaintiff's privileges through the July 13, 2016 letter informing her that her Medical-Dental Staff Membership and clinical privileges were terminated effective July 15, 2016.  The revocation of her privileges was not, and

has never been, reviewed by any reviewing committee, including but not limited to the Medical Executive Committee.

127.    These wrongful actions have caused Plaintiff to suffer professionally and personally. These actions have injured Plaintiff's professional reputation, which is critical to the success of her practice.   Plaintiff has suffered emotional distress because of Defendants' relentless and wrongful pursuit to terminate her privileges to practice.

<u>**Count IV**</u>
<u>**Defamation**</u>
**(Plaintiff v. Defendant Christiana Care)**

128.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 127 as if fully stated herein.

129.    A nurse in the employ of Defendant Christiana Care, acting within the scope of her employment, maliciously made false statements regarding Plaintiff's reputation to members of the medical community and members of the public indicating that Plaintiff had lost her privileges to practice at Christiana Care and would not be returning to the hospital staff.

130.    This statement constitutes slander and slander per se in that those statements tend to injure Plaintiff's reputation, expose her to public distain, contempt, and ridicule, and financial injury and were wholly false.

131.    No privilege allowed this individual in the employ of Christiana Care to make her knowingly or recklessly false and defamatory statements regarding Plaintiff.

## Count V
## Intentional Infliction of Emotional Distress

132.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 131 as if fully stated herein.

133.    Defendants, individually and through their agents, intentionally caused Plaintiff severe emotional distress by their extreme and outrageous conduct.

134.    By their extreme and outrageous conduct and the conduct of their agents in maliciously making false statements to members of the public concerning Plaintiff's reputation, Defendants intentionally, recklessly and maliciously caused Plaintiff to suffer severe emotional distress and emotional anguish.

135.    Further, by terminating Plaintiff's Medical-Dental Staff privileges with insufficient opportunity for Plaintiff to prepare her patients or staff for such a significant shift in her practice, Defendants further subjected Plaintiff to the severe humiliation, embarrassment and degradation of losing much of her patient base.

## Count VI
## Interference with Prospective Economic Advantage
### (Plaintiff v. All Defendants)

136.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 135 as if fully stated herein.

137.    Plaintiff has developed a successful practice and has developed business relationships with expectancies with a probability of future economic benefit to Plaintiff.

138.    The Defendants are competitors or potential competitors of Plaintiff in the relevant markets, and had knowledge of Plaintiff's business relationship or expectancies.

139.    Defendants intentionally interfered with Plaintiff's prospective opportunities, economic advantage and contractual relationships with her patients.  At the time Defendants took their

actions against Plaintiff, there was a reasonably probability that Plaintiff would have entered into business relationships with patients, of which Defendants were intentionally aware.

140.    Defendants intentionally disrupted the prospective relationships and induced patients to forgo the prospective relationships with Plaintiff.

141.    Defendants' conduct was independently unlawful in that statements made about Plaintiff were defamatory.

142.    Based upon Plaintiff's past business, there is a reasonably certainty that, absent the Defendants' intentional misconduct, Plaintiff would have continued in the relationship with her patients or realized the expectancy.

143.    Defendants' conduct therefore constitutes intentional interference with Plaintiff's prospective economic advantage under Delaware law.

144.    Defendants were without privilege or justification and were engaged through improper means.

145.    As a consequence of the foregoing, Plaintiff has been damaged by the actions of Defendants, and Plaintiff seeks damages related thereto.

### Count VII
### Tortious Interference with Contractual Relations
#### (Plaintiff v. All Defendants)

146.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 145 as if fully stated herein.

147.    Defendants Christiana Care, Hoffman and Silverstein were aware that Plaintiff had existing contracts with her patients and took actions that intentionally interfered with those contracts.

148.    Upon information and belief, Defendants and their agents intentionally misled Plaintiff's patients by informing them that Plaintiff was no longer a member of the Medical-Dental Staff of

Christiana Care and provided them the information for All About Women and CCHS Women's Health.

149.    Defendants' actions were taken with the intent to tortiously interfere with Plaintiff's contracts with her patients and were without any justification.  As a result, Defendants' actions caused Plaintiff injury and damages.

150.    Defendants falsely and without any legal or other basis and with malicious intent did interfere with Plaintiff's contract with her existing patient base.

151.    As a result, Defendants are subject to liability to Plaintiff for pecuniary harm resulting from the loss of the benefits of her contracts.

## COUNT VIII
## Declaratory Judgment

152.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 151 as if fully stated herein.

153.    A substantial and continuing controversy exists between Plaintiff and Defendant Christiana Care surrounding the due process followed in Plaintiff's matter regarding the process required under the Bylaws and Credentials Manual.

154.    Under the circumstances, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 authorize this Court to (a) "order a speedy hearing" on this Count, and (b) declare Plaintiff's rights under the Bylaws and Credentials Manual.

## Count IX
## Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Plaintiff v. Defendant Christiana Care)

155.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 154 as if fully stated herein.

156.    Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party from enjoying the benefits of the contract.  This is known as the implied covenant of good faith and fair dealing and this covenant applies to the employment agreement between Plaintiff and Defendant Christiana Care.

157.    At all times relevant herein mentioned, Defendant Christiana Care breached this implied covenant of good faith and fair dealing by acting in bad faith toward Plaintiff.  This bad faith is demonstrated by abdicating its responsibilities imposed by the Bylaws to restrict Plaintiffs clinical privileges.

158.    Defendant Christiana Care's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully moves this Court to enter judgment in her favor and award the following relief:

a)    Declaring that Defendant Christiana Care violated Plaintiff's rights and benefits under the Bylaws and to Due Process;

b)    Declaring Defendant Christiana Care breached its contractual obligations with Plaintiff by terminating her staff privileges without recommendation from the Medical Executive Committee.

c)  Declaring that Defendant Christiana Care defamed Plaintiff and awarding her damages;

d)  Holding Defendants interfered with Plaintiff's current and prospective business relationships and caused her damages;

e)  Holding Defendants Hoffman and Silverstein intentionally interfered with Plaintiff's contract between Defendant Christiana Care and Plaintiff and caused her damages;

f)  Holding Defendants violated Section 1 of the Sherman Act and thereby damaged Plaintiff;

g)  Award Plaintiff compensatory damages, costs and attorney fees and grant such other and further relief as may be just and equitable under the circumstances including make whole relief and damages, costs and attorney fees.

<div style="margin-left:40%">

**LAW OFFICES OF**
**MICHELE D. ALLEN, LLC**
*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Caitlyn E. Quinn (#6319)
724 Yorklyn Road, Suite 310
Wilmington, DE 19707
302-234-8600
302-234-8602 (fax)
michele@micheleallenlaw.com
*Attorneys for Plaintiff*

</div>

Dated: July 10, 2017