# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LYNN E. TALLEY, D.O., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-926-CJB |
| | ) | |
| CHRISTIANA CARE HEALTH SYSTEM, | ) | |
| MATTHEW K. HOFFMAN, MD, and | ) | |
| KENNETH L. SILVERSTEIN, MD, | ) | |
| | ) | |
| Defendants. | ) | |

Michele D. Allen and Catilyn E. Quinn, LAW OFFICES OF MICHELE D. ALLEN, LLC, Hockessin, DE, Attorneys for Plaintiff.

Joanna J. Cline and James H. S. Levine, PEPPER HAMILTON LLP, Wilmington, DE; Barbara T. Sicalides, Barak A. Bassman, and Megan Morley, PEPPER HAMILTON LLP, Philadelphia, PA, Attorneys for Defendants.

## MEMORANDUM OPINION

October 17, 2018
Wilmington, Delaware

*Churthlin of Burke*

**BURKE, United States Magistrate Judge**

Plaintiff Lynn Talley ("Plaintiff") filed this action alleging violations of the Sherman Act (Count I), breach of contract (Count II), lack of procedural due process (Counts III and VIII), defamation (Count IV), intentional infliction of emotional distress (Count V), interference with prospective economic advantage (Count VI), tortious interference with contractual relations (Count VII), and breach of the covenant of good faith and fair dealing (Count IX). (D.I. 17) Presently before the Court is Defendants Christiana Care Health System ("Christiana Care"), Matthew K. Hoffman, M.D. ("Dr. Hoffman"), and Kenneth L. Silverstein, M.D.'s ("Dr. Silverstein") (collectively, "Defendants") motion to dismiss Counts I-VIII of the operative First Amended Complaint ("FAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 22) In a separate Memorandum Opinion issued on October 11, 2018 (the "October 11 Opinion"), (D.I. 61; D.I. 62), the Court addressed the Motion as to Count I's Sherman Act claim, and found that Count I should be dismissed with prejudice. This opinion addresses the portion of Defendants' Motion that seeks dismissal of claims other than the Sherman Act claim, and GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion in that regard.

## I. BACKGROUND AND STANDARD OF REVIEW

The Court incorporates by reference the factual and procedural background and the legal standard of review for Rule 12(b)(6) motions, which were set out in the October 11 Opinion. (D.I. 61 at 2-8)

## II. DISCUSSION

In dispute here is Defendants' request to dismiss the asserted state law claims contained in Counts II, IV, V, VI, and VII.[1] The Court will address them in turn.

---

[1] Plaintiff brought a claim for violation of her due process rights in Counts III and VIII of the FAC, (D.I. 17 at 19-21, 26), and Defendants' Motion also sought dismissal of those two counts. However, Plaintiff's counsel advised at oral argument that Plaintiff was not moving

2

## A.    Count II

Plaintiff brings a claim for breach of contract in Count II against only Defendant Christiana Care. (D.I. 17 at 18-19)  This claim is based on Christiana Care's failure "to follow the process [for terminating Plaintiff's privileges at Christiana Care] outlined in the Credentials Manual[ and the Christiana Care Bylaws.]"  (D.I. 31 at 14; *see* D.I. 17 at ¶¶ 139-43)[2]  In the FAC, Plaintiff alleges that:  (1) "Christiana Care's Bylaws . . . provide[] the procedure for corrective action and appeal rights regarding issues related to physician competence and behavior"; (2) the "Christiana Care Credentials Manual . . . provides additional procedures for corrective action and appeal rights[;]" and (3) "Christiana Care breached its contractual obligations to Plaintiff by failing to adhere to the processes set out in its own Bylaws and Credentials Manual before restricting and then terminating Plaintiff's clinical privileges."  (D.I. 17 at ¶¶ 140-43)

Defendants respond by arguing that "the Credentials Manual precludes physicians, including Plaintiff, from suing Christiana Care or members of its medical staff for any matters relating to a physician's credentialing[.]"  (D.I. 23 at 13)  In other words, Defendants argue that "Plaintiff has waived her ability to sue [for breach of contract]" and that this is made sufficiently clear in the Credentials Manual itself.  (*Id.*)[3]  They point for support to Article 2.C.2(1) of the Credential Manual, titled "Immunity" (the "Immunity subsection"), which provides:

> To the fullest extent permitted by law, the individual releases from
> any and all liability, extends immunity to, and agrees not to sue

---

forward on those due process-related claims.  (Tr. at 82)  As such, the Court will dismiss Counts III and VIII.

[2]    Plaintiff alleges that "[t]he Bylaws and Credentials Manual creates a contract between [her] and Defendant Christiana Care." (D.I. 17 at ¶ 18)

[3]    Defendants correctly note that the Court can consider the Credentials Manual without converting the instant Motion into a motion for summary judgment because the Credentials Manual was "integral to or explicitly relied upon in the" FAC.  *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks, citation, and emphasis omitted).  Defendants attached a copy of the Credentials Manual to their opening brief.  (D.I. 23, ex. B)

> Christiana Care, any member of the Medical-Dental Staff, their
> authorized representatives, and third parties who provide
> information for any matter relating to appointment, reappointment,
> clinical privileges, or the individual's qualifications for the same.
> This immunity covers any actions, recommendations, reports,
> statements, communications, and/or disclosures involving the
> individual that are made, taken, or received by Christiana Care, its
> authorized agents, or third parties in the course of credentialing
> and peer review activities.

(D.I. 23, ex. B at 14-15 (emphasis omitted)) Defendants are interpreting the first sentence of the above provision to extend immunity from suit to Christiana Care without any further qualification, and the second sentence to further explain that this immunity grant relates to "any actions . . . involving [Plaintiff] that are made, taken or received by Christiana Care . . . in the course of credentialing and peer review activities." (Tr. at 61-64) Since this suit relates to the termination of Plaintiff's privileges, which is a part of the credentialing process, Defendants assert that the above subsection of the Credentials Manual provides Christiana Care with immunity from suit as to Count II. (D.I. 32 at 6-7)

Plaintiff counters that Defendants overstate the intent of the Immunity subsection. She asserts that the subsection only applies to "information that may have been discussed or disclosed during any alleged purported 'peer review' process." (D.I. 31 at 14) And Plaintiff argues that her claims, instead, are centered on the failure to "follow the procedures laid out in the Credentials Manual for the revocation of her privileges." (*Id.*) In other words, Plaintiff reads the above contractual language as only extending immunity to people or entities (including Christiana Care) "*who provide information* for any matter relating to appointment." (Tr. at 76 (emphasis added); *see also* D.I. 31 at 13)[4] Plaintiff also notes that this reading is supported by

---

[4]     Defendants' response is that the contractual language "who provide information for any matter relating to appointment, reappointment, clinical privileges, or the individual's qualifications for the same" is meant to modify only the term "third parties" in the first sentence of the Immunity subsection; Defendants claim that this language is not meant to also relate to the actions of all of the other actors (including Christiana Care) referenced earlier in that sentence. (Tr. at 62)

4

the title of the portion of the Credentials Manual in which the Immunity subsection is found: "Grant of Immunity and Authorization to Obtain/Release Information[.]" (D.I. 31 at 13) Because Plaintiff's breach of contract claim is about the *failure to implement* a peer review process prior to her termination, Plaintiff is asserting that her claims have nothing to do with the *provision of information by one entity/person to another as part of* such a process.[5]

Thus, the dispute here is clearly over the scope of the above-referenced contractual language. (Tr. at 61-63, 76) Defendants asserted that Delaware law applies to the issue, (*see* D.I. 23 at 14; D.I. 32 at 7), and Plaintiff did not argue to the contrary. Therefore, the Court will rely on Delaware state law governing the interpretation of contracts (and indeed will assume, as the parties do, that Delaware's law applies to all of the claims at issue in this opinion).

The interpretation of a contract under Delaware law "is a question of law; thus, where the terms of a contract are unambiguous, the meaning thereof is suitable for determination on a motion to dismiss." *Huff Energy Fund, L.P. v. Gershen*, C.A. No. 11116-VCS, 2016 WL 5462958, at *6 (Del. Ch. Sept. 29, 2016); *see also Monier, Inc. v. Boral Lifetile, Inc.*, C.A. No. 3117-VCN, 2008 WL 2168334, at *5 (Del. Ch. May 13, 2008). However, "[w]here there are two (or more) reasonable interpretations of a contract, . . . it is ambiguous, and the Court may not, on a Rule 12(b)(6) motion to dismiss, choose between two differing reasonable

---

[5]    The Court also notes that further down in Article 2.C.2 (the portion of the Credentials Manual containing the Immunity subsection), it states "that the hearing and appeal procedures set forth in this Credentials Manual will be the sole and exclusive remedy with respect to any professional review action taken by Christiana Care." (D.I. 23, ex. B at 15) Those hearing and appeal procedures are set forth in Article 7, which contains detailed procedures that start with allowing the individual (here, Plaintiff) to request a hearing when the Medical Executive Committee makes a recommendation to, *inter alia*, deny or revoke clinical privileges. (*Id.* at 51) As discussed at oral argument, it seems possible to interpret the contract in a way that would allow: (1) that if the sole way to dispute the termination of privileges is via the procedures set out in Article 7, but Christiana Care *entirely fails to follow* those procedures, (*see* D.I. 17 at ¶ 141 (asserting that the breach of contract claim is "based on . . . the failure of Defendants to follow the process outlined in the Credentials Manual")); (2) then Plaintiff should be allowed to sue for breach of contract, (Tr. at 66-68, 78-80). This further adds to the ambiguous nature of the Immunity subsection.

interpretations of ambiguous provisions." *Monier, Inc.*, 2008 WL 2168334, at *5 (internal quotation marks and citation omitted). When "determining whether disputed terms are subject to more than one reasonable interpretation, 'Delaware courts are obligated to confine themselves to the language of the document and [may] not [] look to extrinsic evidence to find ambiguity.'" *Huff Energy Fund, L.P.*, 2016 WL 5462958, at *6 (first alteration in original) (citation omitted).

Both Plaintiff's and Defendants' interpretations are plausible and reasonable. The text of the Immunity subsection is thus ambiguous on this point, and so it would be inappropriate to resolve this dispute at the pleading stage. Defendants' Motion is denied as to Count II.

## B.    Count IV

Plaintiff brings a claim for defamation (and more specifically, slander) against only Christiana Care in Count IV. In order to establish a claim for defamation under Delaware law, a plaintiff must plead: "(1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury." *Essounga v. Del. State Univ.*, C.A. No. K16C-01-027 WLW, 2016 WL 1613206, at *3 (Del. Super. Ct. Apr. 18, 2016) (internal quotation marks and citation omitted). Defendants argue that Plaintiff has failed to sufficiently plead the fourth element. (D.I. 23 at 15) The Court disagrees.

In the FAC, Plaintiff does describe at least one instance where a third party is plausibly alleged to have understood the defamatory nature of a communication made by Christiana Care. This comes when Plaintiff pleads that a patient's ("Patient D") spouse was informed that Plaintiff had been removed from the Christiana Care staff, and that the spouse understood that Plaintiff was thus "not permitted" to practice at the hospital. (D.I. 17 at ¶¶ 62-63, 157-58) Plaintiff alleges that after hearing that information, the spouse went to Plaintiff's office "and became belligerent in her office waiting room." (*Id.* at ¶¶ 63, 158) Plaintiff further pleads that the spouse "began yelling and telling all of the other patients in the waiting room that [Plaintiff] had been removed from staff at Christiana Care." (*Id.* at ¶¶ 64, 158)

Defendants' position as to why these allegations are insufficient to meet the fourth element of a defamation claim is that, although Plaintiff alleged that the spouse "bec[a]me very upset, [] it is not pleaded *why* he was upset." (D.I. 23 at 16 (emphasis added); *see also* Tr. at 69-70) Yet it is clear from the context of Plaintiff's allegations that the patient's spouse was extremely upset *because* he was informed that Plaintiff was no longer on Christiana Care's staff. And because the spouse is alleged to have understood that Plaintiff was "not permitted" to practice at Christiana Care after being "removed from staff," it is a fair inference that the spouse understood that this "remov[al]" was the result of Christiana Care's negative evaluation of some aspect of Plaintiff's performance. *See Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978) (noting that a defamatory communication is one that tends to lower a person in the estimation of the community or to deter third persons from associating or dealing with the person). Thus, it is at least plausible that the spouse of Patient D understood the communication to be defamatory.

Plaintiff has therefore adequately pleaded a claim for defamation.

### D.    Count V

In Count V, Plaintiff brings a claim against all Defendants for intentional infliction of emotional distress. Under Delaware law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Goode v. Bayhealth Med. Ctr., Inc.,* 931 A.2d 437, 2007 WL 2050761, at *2 (Del. 2007) (internal quotation marks and citation omitted). Plaintiff must establish that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. Ct. 1987) (internal quotation marks and citation omitted). "[M]ere

insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not enough to rise to this level. *Id.* (citation omitted).

In the FAC, there are three substantive paragraphs in the body of Count V. The first two reiterate the allegations made with regard to the claim for defamation. That is, Plaintiff there alleges that Defendants discredited her reputation in front of her patients by making false statements to members of the public concerning Plaintiff. (D.I. 17 at ¶¶ 162-63) Yet "an independent action for intentional infliction of emotional distress does not lie where [] the gravamen of the complaint sounds in defamation." *Barker v. Huang*, 610 A.2d 1341, 1351 (Del. 1992).

The only other substantive allegation in Count V comes in the third of the Count's three substantive paragraphs. There, Plaintiff alleges that Defendants terminated Plaintiff "with insufficient opportunity for Plaintiff to prepare her patients or staff for such a significant shift in her practice" and thus "further subjected Plaintiff to the severe humiliation, embarrassment[,] and degradation of losing much of her patient base." (D.I 17 at ¶ 164) To some extent, this sounds a lot like Plaintiff re-casting her breach of contract claim as a claim for intentional infliction of emotional distress. And "[a]llegations of a breach of contract rarely constitute outrageous conduct." *Khushaim v. Tullow Inc.*, C.A. No. N15C-11-212-PRW, 2016 WL 3594752, at *9 (Del. Super. Ct. June 27, 2016). Moreover, to the extent that there are facts and circumstances surrounding Plaintiff's "los[s] [of] much of her patient base" and the "insufficient opportunity" Plaintiff was given to prepare for that loss that could possibly equate to conduct that goes "beyond all possible bounds of decency" and that was "atrocious, and utterly intolerable in a civilized community[,]" Plaintiff has not made it clear *in Count V* what those facts and circumstances are said to be. *See e.g.*, *Shiyanbola v. Amazon, LLC*, No. N17C-08-302 CEB, 2018 WL 1216098, at *1-2 (Del. Super. Ct. Mar. 8, 2018) (granting a motion to dismiss a claim of intentional infliction of emotional distress where the factual allegations in the complaint, which detailed how an employee was terminated after being forced to take a drug test,

8

"simply do not come close to rising to the level of 'extreme and outrageous conduct'"); *see also O'Leary v. Telecom Resources Serv., LLC*, Civil Action No. 10C-03-108-JOH, 2011 WL 379300, at *6 (Del. Super. Ct. Jan. 14, 2011).

Therefore, Plaintiff has failed to adequately plead her infliction of emotional distress claim against Defendants.

## C.     Counts VI and VII

Defendants argue that Count VI ("Interference with Prospective Economic Advantage") and Count VII ("Tortious Interference with Contractual Relations") are insufficiently pleaded against all Defendants. (D.I. 23 at 16)  Defendants explain that both claims require a predicate act of "intentional interference[,]" (*id.*; D.I. 32 at 8-9), and argue that the sole form of intentional interference set out in the FAC (i.e., the act said to give rise to these claims) is the claim for defamation, (D.I. 17 at ¶¶ 172, 179).[6] And because Defendants argued that the defamation claim should fail, they assert that if they were right on that score, then this means that Counts VI and VII should fail as well. (D.I. 23 at 16)

---

[6]     Defendants are correct that an intentional interference is an element of the claims of interference with prospective economic advantage and tortious interference with contractual relations.  A claim for interference with prospective economic advantage requires the plaintiff to establish "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages[.]" *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981); *see also Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017).  The elements of a claim for tortious interference with a business relationship are "the existence of a valid business relation . . . or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [] damage to the party whose relationship or expectancy has been disrupted." *Bowl-Mor Co. v. Brunswick Corp.*, 297 A.2d 61, 65 (Del. Ch. 1972) (internal quotation marks and citations omitted); *cf. Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).

As the Court explained above, Plaintiff has in fact alleged a sufficient defamation claim against Defendant Christiana Care. As a result, the Court can conclude that Defendants' above argument fails as to Christiana Care without engaging in any further analysis.

However, Plaintiff's defamation claim was not brought against Dr. Hoffman or Dr. Silverstein. Thus, Plaintiff must have intended for something other than the defamatory acts set out in Counts VI and VII to be deemed as the acts of intentional interference taken by both of these Defendants. (D.I. 17 at 21) And, indeed, Plaintiff argues that the two tortious interference claims are *not* solely predicated on the defamation claim; she asserts that she alleged sufficient additional facts to set out plausible tortious interference claims against Dr. Hoffman and Dr. Silverstein. (D.I. 31 at 19 ("While the defamatory statement of Defendant's agent is one basis for Plaintiff's tortious interference claims, it is far from the only basis."))

In Count VI ("Interference with Prospective Economic Advantage"), Plaintiff alleges that "she was required on a monthly basis to send over in advance her expected obstetric patients for delivery and surgery along with their charts." (D.I. 17 at ¶ 170) As a result, she pleads that "Defendant Christiana Care was well aware of the prospective opportunities, economic advantages[,] and contractual relationships Plaintiff anticipated with her patients[.]" (*Id.*) Notably absent is any specific allegation that *Drs. Hoffman or Silverstein* were sent the monthly disclosures and/or that they were made aware of Plaintiff's prospective opportunities. Therefore, Plaintiff has failed to plausibly allege an interference with prospective economic advantage claim against the individual Defendants.

Count VII ("Tortious Interference with Contractual Relations") fails for largely the same reasons as Count VI. That is, Plaintiff there alleges that "Defendant Christiana Care was aware of" the "large volume of patients scheduled for surgery within the next several months proceeding Plaintiff's termination" and of "Plaintiff's contractual obligation to perform [those] surgeries." (*Id.* at ¶¶ 180-81) But there are no specific allegations that either Drs. Hoffman or Silverstein knew of those surgeries. The Count also makes allegations generally about what

10

"Defendant" or "Defendants" were "aware" of as it relates to Plaintiff's contracts with patients, (*id.* at ¶¶ 178, 184), or as to the provisions of Plaintiff's lease, (*id.* at ¶¶ 187, 190-91). But these allegations also say nothing particularly specific about Dr. Hoffman or Dr. Silverstein. The facts pleaded there are far too general to make it plausible that these two physicians had the requisite knowledge and intent. Therefore, Plaintiff's claim for tortious interference with contractual relations fails as to the individual Defendants.

## III.    CONCLUSION

For the reasons set out above, the Court GRANTS Defendants' Motion to the extent it seeks dismissal of Counts III and VIII as to all Defendants, Count V as to all Defendants, and Counts VI and VII as to Defendants Dr. Hoffman and Dr. Silverstein. This denial is with prejudice as to Counts III and VIII, and without prejudice to Plaintiff's ability to seek later amendment with regard to Counts V, VI, and VII. The Court DENIES the Motion as to Count II as to Defendant Christiana Care, and as to Counts IV, VI, and VII as to Defendant Christiana Care. An appropriate Order follows.