IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LYNN E. TALLEY, D.O., )
                                  )
      Plaintiff, )
                                  )
  v.                                )    Civil Action No. 17-926-CJB
                                  )
CHRISTIANA CARE HEALTH SYSTEM, )
MATTHEW K. HOFFMAN, MD, and )
KENNETH L. SILVERSTEIN, MD, )
                                  )
      Defendants. )

Michele D. Allen and Catilyn E. Quinn, ALLEN AND ASSOCIATES, Hockessin, DE, Attorneys for Plaintiff.

Joanna J. Cline and James H. S. Levine, PEPPER HAMILTON LLP, Wilmington, DE; Barbara T. Sicalides, Barak A. Bassman, and Megan Morley, PEPPER HAMILTON LLP, Philadelphia, PA, Attorneys for Defendants.

**MEMORANDUM OPINION**

February 19, 2019
Wilmington, Delaware

*signature*

**BURKE, United States Magistrate Judge**

In this action, Plaintiff Lynn Talley ("Plaintiff") now presses only Delaware state law claims against Defendants Matthew K. Hoffman, M.D. ("Dr. Hoffman"), Kenneth L. Silverstein, M.D. ("Dr. Silverstein") and Christiana Care Health System ("Christiana Care") (collectively, "Defendants"). In the operative Second Amended Complaint ("SAC"), Plaintiff alleges breach of contract against Christiana Care (Count I), defamation against Christiana Care (Count II), interference with prospective economic advantage against all Defendants (Count III), tortious interference with contractual relations against all Defendants (Count IV), and breach of the covenant of good faith and fair dealing (Count V) against Christiana Care. (D.I. 67) Presently before the Court is Defendants Dr. Hoffman and Dr. Silverstein's (collectively, the "Individual Defendants") Motion to Dismiss Counts III and IV of the SAC against them, which is filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").[1] (D.I. 70) For the reasons set forth below, the Court GRANTS the Motion with prejudice.

**I.  BACKGROUND**

  **A.  Factual Background**

  **1.  The Parties**

Plaintiff is a board-certified physician in the field of obstetrics and gynecology ("OB-GYN" or "OB/GYN"). (D.I. 67 at ¶¶ 2, 15) She is a resident of Pennsylvania and previously had a private practice in Newark, Delaware. (*Id.* at ¶¶ 2, 10)

---

[1]  Defendant Christiana Care is not a party to the instant Motion. (D.I. 70)

Christiana Care, a teaching hospital, is a private, non-profit corporation with its headquarters located in Newark, Delaware. (*Id.* at ¶¶ 3, 34)[2] Dr. Hoffman works in Delaware as the Chair of Obstetrics and Gynecology at Christiana Care. (*Id.* at ¶ 4) Dr. Silverstein works in Delaware as the Chief Clinical Officer of Christiana Care. (*Id.* at ¶ 5)

### 2. Plaintiff's Tenure at Christiana Care and the Events Leading to Her Termination

Plaintiff, a member of the Medical-Dental Staff at Christiana Care from 1982 until her termination on July 15, 2016, was granted privileges to practice medicine at Christiana Care in accordance with the Medical-Dental Staff Bylaws ("Bylaws") and the Medical-Dental Staff Credentials Manual ("Credentials Manual"). (*Id.* at ¶¶ 16-17)

As is set out in the SAC, Plaintiff's tenure with Christiana Care was rocky at times. The SAC describes how Plaintiff: (1) was at one point placed on a "Focused Professional Practice Evaluation[;]" (2) was required in 2014 to take a voluntary leave of absence; and (3) was removed from the teaching service for four weeks in 2015, due to complaints made against her by residents. (*Id.* at ¶¶ 25, 27-28, 43-44) In various ways, Plaintiff alleges that these negative employment actions were not due to her fault, but due to the wrongful acts of her colleagues. (*Id.*)

Then, around March 24, 2016, Christiana Care precautionarily suspended Plaintiff by way of a letter sent to Plaintiff by Dr. Silverstein. (*Id.* at ¶ 47; D.I. 71, ex. A) According to the letter, this suspension came about because, *inter alia*, Plaintiff had not appropriately handled a Cesarean Section that Plaintiff performed on a patient on March 15, 2016, and because, more

---

[2]  Although the SAC alleges that Defendant Christiana Care is itself a teaching hospital, Christiana Care is the parent of an entity that runs a teaching hospital on various campuses, one of which (Christiana Hospital) is where the events at issue here took place. (D.I. 61 at 2-3 n.1)

3

generally, Plaintiff's behavior and interactions did not promote a working environment that was "'conducive to team-based patient care'" or to the "'education of residents.'" (D.I. 67 at ¶ 50; D.I. 71, ex. A) Because her privileges were now suspended, Plaintiff had to seek immediate coverage for her patients. (D.I. 67 at ¶ 54) Plaintiff asserts that Christiana Care's ultimate intention with this suspension was for its OB-GYN hospitalists and its OB-GYN group in Greenville, Delaware to absorb Plaintiff's patients. (*Id.* at ¶ 56)

Meanwhile, Plaintiff alleges that on or about April 21, 2016, Dr. Hoffman was sent a report via e-mail regarding provider Cesarean Section rates for the period January 2013 through 2016. (*Id.* at ¶ 73) According to the data in the report, Plaintiff had performed 470 procedures during the listed time period. (*Id.* at ¶ 75) Plaintiff thus alleges that Dr. Hoffman was aware of the contractual relationship that Plaintiff had with these patients, and that he had every reason to believe that Plaintiff would have continual relationships with those patients going forward. (*Id.* at ¶ 76)

Around the same time that Plaintiff had been suspended, her privileges at Christiana Care were up for renewal. (*Id.* at ¶ 77) Plaintiff alleges that on April 19, 2016, the "OB/GYN Credentials Committee" recommended that she be given a four-month conditional renewal of privileges. (*Id.* at ¶ 79) She then asserts that on April 20, 2016, Dr. Hoffman presented the OB/GYN Credentials Committee's "purported 'recommendation'" to the Staff Credentials Committee and that the Staff Credentials Committee "relied upon those representations and accepted the 'recommendations' without modification." (*Id.* at ¶ 80)

On May 9, 2016, Christiana Care's Board of Directors in fact renewed Plaintiff's privileges for four months, conditioned on Plaintiff's satisfaction of several requirements. (*Id.* at ¶¶ 79-80; D.I. 71, ex. B) Plaintiff alleges that, in taking this step, the Board of Directors "also

4

subsequently relied upon [Dr. Hoffman's] representations when they accepted and adopted the 'recommendations['] of the OB/GYN Credentials Committee." (D.I. 67 at ¶ 80) One of the Board of Directors' requirements was that Plaintiff have "no further workplace concerns regarding behavioral or clinical issues found by the Dept. of OB/GYN peer review committee to constitute at risk or reckless behavior." (D.I. 71, ex. B) Plaintiff's suspension was thus lifted and she returned to work at Christiana Care. (D.I. 67 at ¶¶ 69-70)

But then on July 13, 2016, Dr. Hoffman called Plaintiff and informed her that she would be terminated from the Medical-Dental Staff of Christiana Care, effective July 15, 2016 at 5:00 p.m. (*Id.* at ¶ 83) On the same date (July 13, 2016), Dr. Silverstein sent a letter to Plaintiff, which reiterated that Plaintiff's privileges would be terminated as of July 15. (*Id.* at ¶ 94; D.I. 71, ex. B)[3] The letter explained that Christiana Care's Board had previously approved a renewal of Plaintiff's privileges only on certain conditions previously-referenced above, (D.I. 71, ex. B), and stated that on July 12, 2016, "the Professional Excellence Committee . . . reviewed two workplace concerns [and] determined that [they] were substantiated and constituted unacceptable at-risk behavior[,]" (*id.*). The letter then explained that Plaintiff's "medical staff membership and clinical privileges have been revoked." (*Id.*)

Plaintiff alleges that her termination was contrary to the Credentials Manual and Bylaws, because the decision was "not reviewed by any reviewing committee, including but not limited

---

[3] Although they are not attached as exhibits to the SAC, Individual Defendants included a copy of the July 15, 2016 letter and the March 24, 2016 letter as exhibits to their opening brief. (D.I. 71, exs. A & B) The letters are referenced in the SAC and Plaintiff's claims are clearly "based on" the letters, (D.I. 67 at ¶¶ 50, 94); thus, the Court may consider the contents of the letters when reviewing this Rule 12(b)(6) Motion. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F. 2d 1192, 1196 (3rd Cir. 1993). The Court has thus cited to the letters in this Factual Background section.

5

to the Medical Executive Committee[.]" (D.I. 67 at ¶ 87) She asserts that prior to any change affecting her staff privileges, either Dr. Hoffman or the designated departmental committee was required to report in writing the grounds suggesting the need for corrective action against her, and that such report should include reference to: (1) the findings of any investigation of that conduct; (2) any prior peer reviewed actions to date; and (3) any recommended corrective/disciplinary action. (*Id.* at ¶ 89) But according to Plaintiff, no such report was ever prepared by Dr. Hoffman or others, prior to her termination. (*Id.* at ¶ 90) And according to Plaintiff, if any such report was generated, it should have been submitted to and considered by the Staff Credentials Committee and (if that committee decided that further corrective or disciplinary action was necessary) the Medical Executive Committee. (*Id.* at ¶ 91) According to Plaintiff, however, no committee, including the Staff Credentials Committee or the Medical Executive Committee, made any recommendation regarding the termination of her privileges. (*Id.* at ¶¶ 92-93) Instead, according to Plaintiff, Dr. Silverstein "took unilateral action" to terminate her privileges. (*Id.* at ¶ 94)

### B. Procedural Background

On July 10, 2017, Plaintiff filed her initial Complaint. (D.I. 1) The case was referred to the Court on July 12, 2017 for handling through case-dispositive motions. The parties thereafter jointly consented to the Court's jurisdiction to conduct all proceedings in the case. (D.I. 11)

After Plaintiff filed a First Amended Complaint ("FAC"), (D.I. 17), Defendants countered with a motion to dismiss Counts I-VIII of the FAC (the "first motion to dismiss"). (D.I. 22) In a Memorandum Opinion issued on October 11, 2018, (D.I. 61; D.I. 62), the Court granted the first motion to dismiss with prejudice as to all Defendants with regard to Count I, which alleged a violation of Section 1 of the Sherman Antitrust Act. Additionally, in a separate

6

Memorandum Opinion issued on October 17, 2018, (D.I. 63; D.I. 64), the Court addressed the first motion to dismiss as it related to Count II's breach of contract claim, Count III and VIII's procedural due process claims, Count IV's defamation claim, Count V's intentional infliction of emotional distress claim, Count VI's interference with prospective economic advantage claim, and Count VII's tortious interference with contractual relations claim. The Court granted the first motion to dismiss with prejudice regarding Counts III and VIII's procedural due process claims as to all Defendants, granted the motion without prejudice regarding Count V's intentional infliction of emotional distress claim as to all Defendants, granted the motion without prejudice regarding Counts VI and VII's tortious interference claims as to the Individual Defendants, and denied the motion regarding Count II as to Defendant Christiana Care and regarding Counts IV, VI and VII as to Defendant Christiana Care. (D.I. 64)

Thereafter, Plaintiff filed the SAC on November 2, 2018, which includes Count III and IV—the two tortious interference claims that are at issue in the instant Motion. (D.I. 67) The Individual Defendants filed the instant Motion on December 3, 2018. (D.I. 70) The Motion was fully briefed as of December 24, 2018. (D.I. 85)

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss the plaintiff's complaint based on the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted).

In assessing such a motion, first the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3rd Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

## III. DISCUSSION

As noted above, with their Motion, the Individual Defendants seek dismissal as to them of Counts III's claim for interference with prospective economic advantage and Count IV's claim of tortious interference with contractual relations. Below, the Court will first set out the relevant legal standards applicable to the Motion as well as the Individual Defendants' arguments for dismissal. Thereafter, the Court will assess whether, pursuant to the applicable law and the content of the SAC, Counts III and IV should be dismissed.

### A. Relevant Legal Standards and Individual Defendants' Arguments

In order to sufficiently plead Count III's claim under Delaware law for interference with prospective economic advantage, Plaintiff must set out facts that plausibly establish: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages[.]" *DeBonaventura v.*

8

*Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981); *see Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017). Additionally, in order to sufficiently plead Count IV's claim of tortious interference with contractual relations, Delaware law requires Plaintiff to sufficiently plead the following elements: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks and citation omitted) (emphasis omitted); *see also Arunachalam v. Pazuniak*, Civil Action No. 15-259-RGA, 2018 WL 4603265, at *4 (D. Del. Sept. 25, 2018).

In bringing the instant Motion, Individual Defendants claim that Counts III and IV "should be dismissed . . . because they constitute impermissible attempts by Plaintiff to bootstrap her contract claims against Christiana Care into tort claims against the Individual Defendants." (D.I. 71 at 5) In making this argument, Individual Defendants are relying upon what is known as the "bootstrapping doctrine." Delaware courts have explained the basis for this doctrine by noting that "a plaintiff bringing [a] claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort" and that "[i]n preventing gratuitous 'bootstrapping' of contract claims into tort claims, courts recognize that a breach of contract will not generally constitute a tort." *Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 377 (D. Del. 2008) (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, C.A. No. 05C-05-108, 2007 WL 2142848 (Del. Supr. July 25, 2007)). Thus, pursuant to the bootstrapping doctrine, although the same conduct may give rise to a breach of contract claim and a tortious interference claim, "a plaintiff bringing [a tortious interference] claim must allege breach of an independent duty imposed by law, rather than a duty which arises . . . by mere

agreement of the parties." *Dynamis Therapeutics, Inc. v. Alberto-Culver Int'l Inc.*, No. CIV.A. 09-773-GMS, 2010 WL 3834405, at *5 (D. Del. Sept. 24, 2010) (internal quotation marks and citation omitted). In other words, in attempting to satisfy the intentional, wrongful interference elements of Counts III and IV, Plaintiff must allege wrongful conduct that amounts to something beyond that constituting a breach of her contract with Christiana Care. *Id.* (citing cases).

Individual Defendants argue that Plaintiff has not done so here. Instead, they assert that "Plaintiff's claims for tortious interference with prospective business relations and tortious interference with contract each fail to state a claim because the SAC does not allege conduct by Individual Defendants in violation of any duty independent of Christiana Care's Bylaws and Credentials Manual." (D.I. 71 at 6-7)

**B.     Discussion**

In responding to Individual Defendants' arguments, Plaintiff acknowledges the existence of the bootstrapping doctrine in Delaware law. (D.I. 78 at 5) And she also acknowledges that, to avoid running afoul of that doctrine, she must allege the breach of an independent duty imposed by law in order to successfully plead Counts III and IV against these Defendants. (*Id.*) In arguing that she has overcome this hurdle in the SAC, Plaintiff asserts that the independent breach at issue is "Dr. Hoffman's misrepresentations to the OB/GYN Credentials [C]ommittee regarding [Plaintiff's] privileges[,]" which "ultimately led to the termination of Dr. Talley's privileges to practice at" Christiana Care. (*Id.*) This independent act, she argues, "sounds in tort, more specifically misrepresentation, not breach of contract." (*Id.*)

The Court finds Plaintiff's argument unavailing. For one thing, this alleged act of misrepresentation has nothing to do with Dr. Silverstein, so the Court does not see how it could save Counts III and IV as to that Defendant. (D.I. 85 at 2 n.2)

10

But even as to Dr. Hoffman, Plaintiff's position does not hold water. This is because, as Individual Defendants note, (D.I. 85 at 1), the SAC simply never alleges that Dr. Hoffman made any misrepresentations to the OB/GYN Credentials Committee. Indeed, as Individual Defendants point out, the word "misrepresentation" does not appear even one time in the SAC. (*Id.*) In paragraphs 79 and 80 of the SAC, the pleading does state that the OB/GYN Credentials Committee recommended in April 2016 that Plaintiff be given a four-month conditional renewal of her privileges, and it goes on to note that Dr. Hoffman presented that "purported 'recommendation'" to the Staff Credentials Committee (who, in turn, "relied upon those representations and accepted and adopted the 'recommendations'" without modification). (D.I. 67 at ¶¶ 79-80) But nowhere in those paragraphs, or anywhere else in the SAC, does Plaintiff affirmatively assert that Dr. Hoffman *misrepresented* any fact to the OB/GYN Credentials Committee (or to the Staff Credentials Committee).[4] Nor does the SAC discuss or describe how Dr. Hoffman's conduct purportedly satisfies the other elements of a claim for intentional or negligent misrepresentation under Delaware law. Put simply, Plaintiff's claims in Counts III and IV against the Individual Defendants cannot be saved by allegations that Plaintiff never made. *See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290 (3rd Cir. 2014) ("[A] court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency").[5]

---

[4] Indeed, the SAC does not describe any representations that Dr. Hoffman made to the OB/GYN Credentials Committee of any kind.

[5] Moreover, as Individual Defendants note, the content of Counts III and IV does otherwise suggest that these claims really are based on acts that are asserted to be breaches of Plaintiff's contract with Defendant Christiana Care. Both Counts include the following paragraphs, which appear to set out the intentional act, sounding in breach of contract, which is said to give rise to the tort claims at issue: (1) "Defendants intentional violation of Plaintiff's

11

## IV.     CONCLUSION

For the reasons set out above, the Court GRANTS Individual Defendants' Motion; Counts III and IV against them shall be dismissed. The dismissal shall be with prejudice, as Plaintiff has now had two chances to correct deficiencies in these claims against the Individual Defendants, yet she has not been able to do so. (D.I. 71 at 8-10) Indeed, in her briefing, Plaintiff did not seek further leave to amend if her claims at issue here were found wanting. For these reasons, any further opportunity to amend would be futile.

An appropriate Order shall issue.

---

rights as set forth in the By-laws and Credentials Manual caused Plaintiff's staff privileges and credentials to be terminated and as a result intentionally interfered with Plaintiff's business opportunities she had a reasonable probability with in the future[,]" (Count III); and (2) "Defendants intentional violation of Plaintiff's rights as set forth in the By-laws and Credentials Manual caused Plaintiff's staff privileges and credentials to be terminated and as a result intentionally induced Plaintiff's and caused Plaintiff's patients to terminate their contractual relationship with her" (Count IV). (D.I. 67 at ¶¶ 147, 165)